**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**(1) CHANDLER BRITAIN BRADFORD,**<br><br>**Defendant.** | **No. SA-22-CR-00570-OLG** |

**TRIAL MEMORANDUM OF THE UNITED STATES OF AMERICA**

The United States of America files this Pretrial Memorandum to familiarize the Court with the Government's case and evidentiary issues related to the trial presentation.

**BACKGROUND**

From around June 30, 2018 through October 4, 2022, Defendant, Chandler Britain Bradford, engaged in a multi-million-dollar scheme to illegally export thousands of AR-style firearms to his co-defendant, Julio Cesar Gomez-Mendoza, who is a Mexican citizen who lived in the city of Monterrey, Nuevo Leon, Mexico. Defendant provided Gomez-Mendoza with the gun parts, tools, and advice needed to build at least around 4,800 AR-15-style rifles. Defendant did not, however, have a license to export controlled firearms parts or ammunition.

During the conspiracy, after receiving an order for gun parts from Gomez-Mendoza, Defendant would purchase the components needed to fill the order from various manufacturers in the United States and China. Upon receiving the components, Defendant would package them for delivery to Mexico. Initially, Defendant shipped the parts intended for Gomez-Mendoza to a mail center in Laredo, Texas. Beginning around February 2021, Defendant began personally driving

the packaged gun parts to storage units near the Mexican border in Laredo and the Rio Grande Valley. After delivering the gun parts, Defendant would confirm the delivery with Gomez-Mendoza. Gomez-Mendoza would then send various truck drivers working as couriers to pick up the gun parts and smuggle them to Monterrey, Mexico. Once the gun parts arrived in Mexico, Defendant would give Gomez-Mendoza advice on manufacturing firearms and would help Gomez-Mendoza troubleshoot technical problems with the gun parts and guns that Gomez-Mendoza had received.

For Defendant's services, and to provide capital for Defendant to continue to buy gun parts, Gomez-Mendoza arranged for Defendant to receive large amounts of money through wire transfers and bulk cash deposits to Defendant's bank account. In total, Defendant received over $3.5 million from Gomez-Mendoza, some of which he used to continue to buy gun parts in furtherance of the conspiracy.

For his conduct, Defendant was charged in a Third Superseding Indictment with Conspiracy to Smuggle Goods from the United States, in violation of 18 U.S.C. §§ 371 & 554(a); Conspiracy to Traffic Firearms, in violation of 18 U.S.C. § 933; Conspiracy to Transfer Firearms for Use in a Felony, in violation of 18 U.S.C. § 924(h); four counts of Smuggling Goods from the United States, in violation of 18 U.S.C. § 554(a); and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). His case is set for trial on August 10, 2026.

## POTENTIAL TRIAL ISSUES

### I. Statements by Defendant's co-conspirators that were made in furtherance of the conspiracy are admissible under Federal Rule of Evidence 801(d)(2)(E)

The Government anticipates offering co-conspirator statements at trial. In particular, the Government will present evidence of co-conspirator statements, including text and electronic messages and oral conversations, which were made in furtherance of the criminal conspiracy

charged in the Third Superseding Indictment—that is, that Defendant and others conspired to smuggle goods from the United States, traffic and illicitly transfer firearms, and launder money.

When, as here, a case involves a conspiracy, a statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. *See* Fed. R. Evid. 801(d)(2)(E). To introduce these statements, the Government must show: "(1) the existence of the conspiracy; (2) the statement was made by a co-conspirator of the party; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *United States v. Hall*, 500 F.3d 439, 443 (5th Cir. 2007). "The court may consider the content of the statement at issue as a factual basis for these elements." *Id*.

Here, a conspiracy has been alleged in the indictment: the agreement among the members to illicitly export from the United States to Mexico all the firearms parts necessary to build functioning AR-15-style rifles and the international laundering of money to promote that scheme. The Government anticipates that witnesses at trial will testify about statements made while this scheme was ongoing. These statements were made during and in furtherance of the charged conspiracy and are therefore admissible.

The requirement that the statements be made in furtherance of the conspiracy is "not to be construed too strictly," *United States v. Burton*, 126 F.3d 666, 674 (5th Cir. 1997), but should instead be "broadly construed." *United States v. Johnson*, 872 F.2d 612, 623 (5th Cir. 1989). For example, "a statement made among conspirators for the purpose of describing proper sources, avenues or conduits to promote the conspiracy is 'in furtherance' for purposes of Rule 801(d)(2)(E)." *United States v. Cornett*, 195 F.3d 776, 783 (5th Cir. 1999). This includes statements identifying the role of co-conspirators or statements conveying information to affect

future dealings between the parties. *See Burton*, 126 F.3d at 675. In essence, co-conspirator statements are admissible when they were "intended to advance, facilitate or promote the ultimate conspiratorial objective." *Cornett*, 195 F.3d at 783.

That is the case here. Electronic message conversations between Defendant, Julio Gomez-Mendoza, and other co-conspirators are admissible as co-conspirator statements. The same is true for conversations that Gomez-Mendoza had with other co-conspirators that may be recounted during testimony. Because Defendant participated in the charged conspiracy, these co-conspirator statements are admissible against him at trial. *See United States v. Berry*, 644 F.2d 1034, 1038-39 (5th Cir. 1981) (holding the trial court properly admitted co-conspirator statements made in furtherance of a conspiracy to deal firearms without a license).

**II. Lay opinion testimony about text message and TextNow communications is admissible**

The Government intends to elicit lay opinion testimony from witnesses as to their understanding and interpretation of the evidence that they either heard, saw, or touched under Fed. R. Evid. 701. Unlike Rule 702 expert testimony, there are no notice or discovery provisions regarding Rule 701 lay opinion testimony.

A lay witness may offer opinion testify so long as it is "rationally based on the witnesses' perceptions." Fed. R. Evid. 701(a). "Rationally based" entails that the lay opinion be based on the witnesses' personal knowledge. *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). Personal knowledge upon which a lay witness' testimony rests may be gained during the witness' investigation. *United States v. Gadson*, 765 F.3d 1189, 1206-07 (9th Cir. 2014). In the context of the interpretation of recorded conversations, a lay witness with personal knowledge may give opinions as to the meaning of code words used in such conversations. *Id.*

The Fifth Circuit has generally allowed lay witness testimony to assist the trier of fact with understanding evidence. *See, e.g., United States v. Fuller*, 974 F.2d 1474, 1482-83 (5th Cir.1992) (agent was permitted to testify to the coded language used in drug money laundering). As such, a "witness who provides only lay testimony may give limited options that are based on the witness's perception and that are helpful in understanding the testimony or in determining a fact in issue[.]" *United States v. McMillan*, 600 F.3d 434, 456 (5th Cir. 2010). For example, in drug trafficking cases, the Fifth Circuit has "recognized that testimony about the meaning of drug code words can be within the proper ambit of a lay witness with extensive involvement in the underlying investigation." *United States v. Akins*, 746 F.3d 590, 599 (5th Cir. 2014).

Here, the Government intends to elicit lay opinion testimony from both law enforcement agents and co-conspirators. The witnesses will base their opinions on their unique knowledge of the firearms trafficking organization and the way it operated. For example, Special Agent Eric Watkins will interpret text message and TextNow statements based on his familiarity with the investigation. His testimony with be "either descriptive or based on [his] participation in, and understanding of, the events in *this* case," *United States v. El-Mezain*, 664 F.3d 467, 514 (5th Cir. 2011), and he will not attempt to interpret "clear statements that are within the common knowledge of the jury." *Gadson*, 763 F.3d at 1208. The Court should permit the United States to elicit such opinion evidence.

**III. Witness plea agreements and cooperation agreements are admissible**

Several of the Government's witnesses have entered into plea/cooperation agreements with the Government which set forth, among other things, their obligations to cooperate with the Government and what will happen should they break the agreements. The Fifth Circuit permits the admission of plea/cooperation agreements for such witnesses. *See United States v. Edelman*, 873

F.2d 791, 795 (5th Cir. 1989) ("Admission of a plea agreement wherein the witness has agreed to testify truthfully or face prosecution for perjury is not impermissible bolstering of the witness."); *United States v. Black*, 685 F.2d 132, 135 (5th Cir. 1982) (permitting the admission of such agreements to permit the government to show candor to the jury and minimize a defendant's ability to impeach the witness for bias).

**IV. Business records and public records are admissible**

The Government intends to introduce the following as business records:

- Surveillance videos (from Trevino Mini Storage)
- Lease documents and records (from Trevino Mini Storage, Back Porch Mail Center, Hwy Storage – North Pharr, and Monaco Self Storage)
- Sales orders, receipts, and invoices (from Palmetto State Armory, Anderson Manufacturing, Bear Creek Arsenal, Classic Firearms, KAK Industry, Tactical Sports Depot, Armory Parts Exchange, R&J Legacy, 80 Percent Arms, Cheaper Than Dirt, Gorilla Machining, Velocity Ammunition, and American Gunsmith Tooling)
- Email records (from Google)
- Person encounter lists, vehicle encounter lists, and license plate reader records (from U.S. Customs and Border Protection)
- Financial records (from Security Service Federal Credit Union and Discover Financial Services)
- Cellular telephone records and TextNow records (from telephones associated with Chandler Bradford and Julio Gomez-Mendoza).

These items are all admissible as business records under Fed. R. Evid. 803(6). *See, e.g., United States v. Clotaire*, 963 F.3d 1288, 1294 (11th Cir. 2020) (surveillance video); *United States v. Joseph*, 978 F.3d 1251, 1265 (11th Cir. 2020) (rental application and lease); *United States v. Flom*, 558 F.2d 1179, 1182 (5th Cir. 1977) (invoices); *United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) (emails); *United States v. Osuagwu*, 858 F. App'x 137, 143-144 (5th Cir. 2021) (financial records); *United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011) (certified

telephone records from Verizon Wireless); *United States v. Beasley*, 447 F. App'x 584, 586 (5th Cir. 2011) (telephone records).

To be admissible under Rule 803(6), the proposed document must have been [1] made at or near the time of the events it records or describes, [2] by, or from information transmitted by, a person with knowledge of those events, [3] kept in the course of a regularly conducted business activity, and [4] part of a business's regular practice. The prerequisites for admissibility may be satisfied "by a certification that complies with [Fed. R. Evid.] 902(11)." Fed. R. Evid. 803(6). Working with Rule 803(6)'s business-records exception, Rule 902(11) permits a party to establish the authenticity of documents as domestic business records through a declaration from the records' custodian. *See United States v. Daniels*, 723 F.3d 562, 579 (5th Cir. 2013) ("Records sought to be authenticated through Rule 902(11) must meet the requirements of Rule 803(6)(A)-(C).").

The Government intends to authenticate these business records by offering Rule of Evidence 902(11) certifications rather than live testimony. Rule 902(11) provides that a party may authenticate a business record through a signed certification of records custodian if the proponent of the evidence gives the adverse party adequate notice of its intent to offer the record. The United States has provided the underlying records and the accompanying certifications for the above-noted pieces of evidence, and to-date has not received any objections. For this reason, no records custodians were listed as anticipated witnesses on the United States' witness list.

Similarly, at trial the Government also intends to introduce certified public records related to Defendant's former FFL, Centerfire Trading, and vehicle registration records. Under Fed. R. Evid. 803(8), public records are admissible if they set out "the office's activities" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." This rule is "designed to permit the admission into evidence of public records

prepared for purposes independent of specific litigation." *United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985). That is the case here. The documents related to Defendant's application for an FFL, his acquisition and disposition book, and his vehicle registration records are public records that were not prepared for the purpose of this trial. Under Rule 902(4), a party may authenticate public records such as these through a signed certification. Here, the public records to be introduced have those certifications and are therefore admissible.

**V. Photographs of co-conspirators are admissible**

The Government intends to introduce headshot photos of several members of the firearms trafficking conspiracy who are not on trial. Because several names will come up during trial, this visual presentation is intended to assist the jury in keeping the various conspirators straight. Additionally, in some instances, witnesses may only know other members or associates of the organization by photo or nickname. In that instance, the photos will aid the jury in understanding that the person is one in the same. Introduction of these photos is relevant under Rule 401 and not unduly prejudicial under Rule 403.

**VI. The Court should permit the Government to recall a witness to expedite the trial**

The Government intends to present its evidence in this case in an organized fashion. To do so, and to ensure the most efficient presentation of the evidence, the Government intends to have the case agent, ATF Special Agent Eric Watkins, testify twice during the trial. Special Agent Watkins will testify both about the initial investigation and then about evidence recovered and examined later in the investigation. This will not unnecessarily prolong the trial but will instead ensure that the jury receives the testimony in the most efficient and digestible fashion.

This proposed method of presenting evidence will serve two purposes contemplated by Fed. R. Evid. 611 [Mode and Order of Interrogation and Presentation], which provides:

> (a) Control by court. The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to (1) make those procedures effective for determining the truth and (2) avoid wasting time. . .

Rather than presenting the jury with a jumbled morass of evidence with the hope that they will be able to compartmentalize and sort it as they hear it, the Government proposes to present its case in a much more understandable format. Doing so will also avoid "wasting time" by allowing the United States to deliver an orderly presentation of relevant evidence, thereby lessening any cumulative or repetitive testimony.

The Government further requests that the subject of cross-examination of Special Agent Watkins each time be limited to "the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b).

**VII. Summary exhibits are admissible under Federal Rules of Evidence 1006**

The Government intends to offer several summary exhibits into evidence. Federal Rule of Evidence 1006 allows witnesses to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. "The district court has broad discretion to admit these sorts of summary charts." *United States v. Mazkouri*, 945 F.3d 293, 300 (5th Cir. 2019).

The Government intends to introduce summary exhibits pertaining to invoices and purchase orders for firearms parts, bank records, and phone records. Each of these exhibits synthesize and summarize voluminous writings, recordings, and photographs that cannot be conveniently examined in court. The reports and the underlying records supporting the Summary Exhibits have been provided to the defense. *See* Fed. R. Evid. 1006 ("The proponent must make the originals or duplicates available . . . at a reasonable time and place."). As such, these summary exhibits are admissible under Rule 1006.

**VIII. Demonstrative exhibits are admissible**

The Government intends to use demonstrative exhibits to aid the jury, including examples of belt links and belt-fed ammunition. Any demonstrative exhibits have been marked as such in the Government's Exhibit list, consistent with Rule 107, and can be used at trial. Rule 107 permits the use of illustrative aids to assist the jury in evaluating the evidence, which are not provided to the jury during deliberations unless all parties consent.

## CONCLUSION

For the reasons above, the Government requests that the Court make trial rulings consistent with the above-outlined authority.

Respectfully Submitted,

JUSTIN R. SIMMONS
United State Attorney

*/s/*
BRIAN M. NOWINSKI
Assistant U.S. Attorney
Michigan Bar No. P80027
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7068

RYAN A. GROOMER
Assistant United States Attorney
Texas Bar No. 24074324
601 Northwest Loop 410 Suite 600
San Antonio, Texas 78216
(210) 384-7152

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2026 a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to the parties of record.

/s/
BRIAN M. NOWINSKI
Assistant United States Attorney